Good morning, Mr. Chief Justice, Your Honors. My name is Susan Sherrill Sullivan. I'm a Cook County Assistant State's Attorney here on behalf of the people of the state of Illinois in this matter. This case came up to the appellate court on a 604A interlocutory appeal. We brought a challenge to that court based on the trial court's partial suppression of a statement that defendant made to a fellow gang member in a police interview room. The defendant actually made two statements. He made one on July 31st, 2002, and he made a second one on August 6th, 2002. The trial court suppressed only a portion of the July 31st statement. Suppressed the portion after the arrival of counsel at the police station and it suppressed that on McCauley grounds. The rest of the July 31st statement, the pre-counsel portion, and the August 6th statement in its entirety were not suppressed by the trial court. So I want to first discuss the jurisdictional parameters of the appellate court's decision. As this court knows, in a 604A interlocutory appeal, the reviewing court is jurisdictionally confined to consideration of only the evidence that's suppressed by the trial court. Here, on its own, the appellate court suppressed more. As I said, it suppressed the pre-counsel portion of the July 31st statement and the August 6th statement in its entirety. This, it cannot do. And we ask this court to reverse this portion of the appellate court decision outright based on these 604A jurisdictional grounds. I'll focus the remainder of my argument on this post-counsel portion of the July 31st statement that defendant made. Now, our biggest complaint with respect to how the appellate court reviewed this is just exactly that, how it reviewed it. What the appellate court did in reviewing the suppression order of the trial court as it did in the manner that it did in this case was violate fundamental fairness of the appellate review process. The trial court suppressed this statement on Fifth Amendment McCauley-based grounds. These are the grounds defendant raised, the grounds the parties litigated, and the grounds that the trial court based its ruling on. Now, the appellate court, when we brought the case to the appellate court for its review, sua sponte upheld the suppression order on new statutory construction Fourth Amendment grounds. Not only were these grounds never raised by defendant in the trial court, but they were never litigated in the trial court. And to make matters worse, they weren't even litigated in the appellate court, Your Honors. Once the appellate court came down with its decision and we realized that it was based on these new statutory construction Fourth Amendment grounds, we immediately sought rehearing on that. And we were rebuffed by the appellate court. So we at least tried to get the probable cause evidence before the appellate court in a motion to supplement. Again, we were rebuffed by that court. This isn't, Your Honors, I want to make clear, this isn't really a question of procedural default, as I said. Defendant never raised these claims. The appellate court raised these claims on its own. Nor are we taking issue or contesting at all the principle that a suppression order can be sustained by a reviewing court on any ground of record. We understand that that particular rule of appellate review respects the role of the reviewing court as arbiter of correct results, not correct reasoning. What we do contest in this case is the violation of the built-in fairness limitations of the appellate review process itself. If the new grounds unjustly deprive a litigant of an opportunity to present proof or argument, then the adversarial process and the system of appellate review itself is weakened and brought into disrepute. And that's exactly what happened in this case. The reality of this case, Your Honors, is that there's so much probable cause on this defendant. Defendant himself didn't even contest it below. He had three of his co-defendants identify him as a shooter. He himself made an earlier admission to Michael Davis while they were awaiting transport in a bullpen. And in that admission he described that he used an assault rifle as the weapon. The police then found the same assault rifle, the same type of gun, in a yard a half block away from the crime scene. Another judge actually issued a COH order based on this probable cause evidence. That's how much probable cause evidence on the defendant there was in this case. Nonetheless, on the basis of a Fifth Amendment Macaulay-based record, the appellate court found no probable cause and a purported chain of taint culminating in the appellate court's suppression of both defendant statements in their entirety. This it should not do. Reviewing courts should review, not write on a clean slate and forever tie the hands of the litigants to present existing proof and argument that would actually refute the new theory that the appellate court raises. And on the Fifth Amendment Macaulay issue, it's your position that after we rule on these other issues it should be remanded to the appellate court on that issue? Yes, Your Honor. The parties, if this court recalls in the motion. The parties are in agreement on that? The parties are in agreement. So we ask this court to reverse the appellate court's Fourth Amendment-based analysis and rulings in its entirety on procedural grounds. We then just simply vacate the appellate court judgment and remand the appellate court to decide what was originally briefed and argued? Your Honor, but for this construction of the County Jail Act issue, I would ask for that. I would agree with Your Honor. The problem is this particular issue, with respect to the Fourth Amendment-based rulings, yes. With respect to this particular issue, there's so much confusion out there. There's such a chill on the lower courts and litigants alike with respect to this issue. That we ask this court to decide this issue on the merits. We ask this court to repudiate, once and for all, the appellate court's construction of the Act. So with respect to this particular issue, we would ask the court to decide on merits. You would decide, however, simply to remand it and send it back to the position it was before the case was ever argued in the appellate court? That would be an alternative, wouldn't it? Because that would vacate the judgment relative to the... Surely this court could do that, but we ask this court not to with respect to this particular issue. As I said, the chill out there, the uncertainty. Litigants, courts alike, don't even really know what kind of animal this judicial writ of order is, what the quantum of proof is or anything. So the chill would still remain if this court simply vacates the order. So we ask this court to actually affirmatively repudiate the appellate court's reasoning and construction on the merits with respect to this issue. The appellate court found two sections of the County Jail Act to be in conflict, and it felt they needed to be harmonized. Section 4, and that can be found on page 56 of the appendix in our opening briefs, is the commitment discharge provision. That provides that the sheriff shall receive and confine persons committed to his jail until they are discharged by due course of law. Section 19.5, the jail protocol provision, and that's on page 70 of our appendix, permits the sheriff to implement a policy that permits release of detainees to law enforcement for investigations on unrelated charges. The appellate court and defendant offer two different rationales in support of the appellate court's construction of the act. Your Honor? Had a policy been implemented when this transfer was made? Yes, it was in place. It was legislatively in place, and also the actual protocol was in place when this case took place. Neither position, the appellate court nor the defendant's position, justifies the amendment that was had to the jail protocol provision in this case. First, the appellate court's position. As I said, it harmonized these two provisions, and it did so by inserting the due course of law language from Section 4, the discharge commitment provision, into the jail protocol provision. Then it interpreted this new language to require a writ or judicial order. First, the appellate court looked to this court's decision in People v. Cantha, and from that decision it determined that the release envisioned by the legislature in the jail protocol provision interfered with the bail court's authority. Next, as I said, it read this due course of law requirement into the jail protocol provision. In order to protect the bail court's authority. However, this court's decision in Cantha actually supports the opposite conclusion. The use of the jail protocol provision does not interfere with bail. The detainee can be simultaneously in the legal custody of the sheriff and the temporary physical custody of another entity without the bail court's authorization. It's not interfering with the authority of the bail court whatsoever. The two things are apples and oranges. So long as the sheriff doesn't actually modify bail, and that's one of the teachings of Cantha, the sheriff has a vast array of legislative enactments with which to exercise his discretion with respect to the detainee. So long as it's legislatively authorized, it's not going to interfere with the bail court's authority. And that includes the temporary release of the detainees envisioned by the legislature in the jail protocol provision. And the appellate court's determination regarding the conflict between these two provisions misunderstands that both provisions envision different forms of custody and release. There's a world of difference between discharge from commitment and the temporary physical custody release of the jail protocol provision. These two provisions do not conflict, and we ask this court to reverse the appellate court's construction of the act, as I said, on the merits. Now, defendant, he offers his own theory in support of the appellate court's construction. What he offers is a judicial oversight theory. He abandons the appellate court's judicial order or writ requirement, and he suggests in its place, quote, some sort of probable cause requirement. Essentially, defendant thinks the judiciary needs to be inserted into this provision in order to police the police and protect the rights of incarcerated inmates. The fundamental problem with defendant's theory is that he's never established that the jail protocol provision warrants construction. It's plain on its face. And even if it is somehow different, and that's one of the primary arguments that defendant makes with respect to his theory, than the other provisions in the provision, defendant doesn't make it ambiguous. It only makes it different. Difference doesn't warrant statutory construction. The fact is, defendant can't show the requisite ambiguity. The appellate court can't show the requisite conflict. And the reason, your honors, is because both of their arguments are premised on policy reasons, not statutory construction grounds. And as this court knows, policy doesn't justify amending legislation. So, for all of these things I've said, and additionally, the other issues that are raised in this brief, unless this court has any questions? I just want to, I have one. But just to recap, there's a lot going on here. You want to remand on the McCauley issue? Yes. You want a, get to the judicial warrant issue that you just were articulating, reverse on that? Yes. The whole procedural probable cause issue, reverse on that? Vacate outright. Vacate that. On procedural grounds. On procedural grounds. And I don't believe, did you touch upon the inaudible audio tapes of I believe July 31st and August 6th? I did not, your honor. I didn't put that in my argument. Our position is, I feel covered in our briefs, but we would ask to reverse that evidentiary ruling. That would be a discretionary ruling of the trial judge based on the fact that they were inaudible, right? Yes. Yes, that's an evidentiary ruling that obviously, as this court knows, the trial court has the discretion to make. Right. Okay. That's it. If I might add one thing with respect to the fourth, just so it makes sense, it seems like we're asking all different kinds of things and different kinds of remedies in this case. The reason we're not asking for reversal on the merits with respect to the fourth, obviously we'd win that right now, given the record before this court on that. Defendant hasn't had his opportunity to present proof and argument on that, and we think that the system needs to work the way it should. So even though we could get an easy win on that in this court, on the fourth, we would ask that it just vacate the opinion on that and the merits and leave it. Leave the parties in place to litigate it in the future before the trial court, if they so desire. So for all these reasons, Your Honors, we would ask this court to reverse the suppression of the additional evidence on 604A jurisdictional grounds, to reverse the Fourth Amendment-based analysis and rulings on procedural grounds, to reverse the construction of the jail protocol provision on the merits, and to remand this cause to the appellate court for rightful consideration of the Fifth Amendment Macaulay. And we would ask this court to reverse the additional evidence on the Macaulay-based issue that was originally brought before it. Thank you, Counsel. Mr. Rimland, you may proceed when you're ready. Thank you. If it's still morning, good morning, Chief Justice Fitzgerald, Chief, and the other justices of this court. I'm proud to be standing here before this court and having the opportunity to do this, and I'd like to start out by saying that on the briefs with me, sitting at the council table, is young Mr. Joshua Kutnick. The one thing that I do necessarily begin to agree with, with the representations of Ms. Cheryl Sullivan, is that in terms of the Fourth Amendment issue, I agree with her. I think that that, if that's going to be litigated, it should be litigated at some future point in time, and not now, because I don't believe that there are sufficient facts and circumstances before this court, nor were there sufficient facts and circumstances before the appellate court, for them to have made that decision. You also agree with her that CAMPA is irrelevant in this case? I don't know that I agree that CAMPA is irrelevant, because let me tell the court that I'm not here as a representative of the appellate court. I'm here as a representative of the defendant of Iris Hunt. I pressed in the trial court a motion to suppress his, the overhear, the statements that were allegedly made in that, on that tape, on the basis of Fifth Amendment, slash McCauley due process types of arguments. And in terms of the appellate courts leaning to and relying on CAMPA, I have attempted in my brief to suggest why it is that they may have relied on that, but in terms of a direct answer to this court, I do not have the answer. I cannot tell the court what was in their minds. It wasn't part of their conference. It wasn't part of their decision-making process when they made that determination. On two issues, though, you're in agreement, vacating on the Fourth Amendment rationale of the appellate court and also remanding on the McCauley issue? Yes, I do. Those two matters are at least set aside? Are set aside, yes. What I would like to say that, first of all, with regard to the statements, the first statement of July 31st and then the second statement of the August 6th, that the trial court suppressed the first, or excuse me, the last 45 minutes of the tape on July 31st. And did not suppress the tapes on August 6th for his own reasons, because there was no attorney present and he didn't believe that McCauley affected the August 6th scenario. Although on July 31st, the attorney was present seeking to interview his client. While the overhear was going on and with certain detail and facts, it would suggest strongly that the police knew he was there because he asked to see him. The police rejected it, put him off for some 45 minutes while they continued their overhear. I personally have been in that same situation where I've gone to police stations at the behest of family members where I have never met the defendant. I've shown up. I've asked to see my client. Police officers have set me aside in one instance for several hours before they finally said, okay, now you can see your client. But by the way, he doesn't even know who you are. I've been also asked to leave police stations because police officers have gone in, said, do you know a guy by the name of Jack Remland? No, I don't know him. That's because I was hired by the family and we all know what has happened in those types of situations. But in any event, getting back to those two tapes, those two days of tapes, I should say, it certainly was our position that once the attorney Anderson arrived at the area floor police department on July 31st, that from that point forward, he was entitled to visit with his client, but they should have stopped the interview. They didn't. So we are in agreement that the first 15 minutes before he arrived there are not suppressible, but however the last 45 minutes are. In terms of the jurisdictional parameters of this case, the appellate court does have the distinct advantage of deciding issues that were not otherwise argued below. However, in this particular case, they not only decided based upon certain issues that weren't presented below, they decided on this Fourth Amendment issue, this illegal arrest. They then went on from there to suggest that anything that he said later on in either one of those two day tapes were suppressible because of the taint. And again, as I would readily admit to this court, we are not suggesting that there was a sufficient probable cause determination for Fourth Amendment purposes. And in the event that this court were to vacate that part of the decision, that would enable us in the future, since this case is still untried, to be able to argue if we deem appropriate that the Fourth Amendment issues are suppressed. I think that we have the opportunity to tell him, okay, here are things that I've heard on the tapes when I listened to them. Hovey waived the August 6th tape when he told Judge Surya that he was not even concerned with the August 6th tapes because they were inaudible. And those were his own words. So that as far as the August 6th tape is concerned, I think that that should not necessarily be suppressed, but I think that the state has waived that particular issue with respect to pursuing the August 6th tape. And I must also say that with respect to the August 6th tapes and the July 31st tapes, not only the trial court but the appellate court also, at the behest of the state's attorney's office, the appellate court listened to the tapes. They provided the appellate court with the tapes that weren't necessarily part of the record to begin with. However, in the interest of justice, I simply agreed to allow them to supplement the record in the appellate court to provide the appellate court with those tapes. And the appellate court, three justices on the appellate court, likewise listened to those tapes and could not discern matters that the state's attorney's office was proffering that they heard on the tape. As far as the statutory construction aspect of this, the best that I was able to glean from reading the appellate court's decision in this case was the fact that they believed that there was an ambiguity based upon the fact that there were separate sections of that statute which called for a different type of conduct. In other words, they looked at all the other sections of the County Jail Act and discerned that they were for the health, safety, and administration of the jail, that they had nothing at all to do with allowing law enforcement to pursue their own interests. 19.5 of the County Jail Act specifically allows a release of a person, an inmate, to law enforcement agents for purposes only of unrelated criminal investigations. Now, what does that say in terms of the rest of the code or the rest of the statute? It says that here we have a real distinct feature, and that distinct feature itself allowed police and law enforcement agents to use the good offices, the good graces of the sheriff or warden, to take people out of the jail for purposes of doing other investigations, whereas everything else in the statute has to do with the health, safety, and welfare of inmates. So they saw a distinct difference, and for that reason they considered that it was ambiguous and that they wanted to apply the language that required due course of law and or some judicial oversight to their decision in the case. And as best I can understand, that would be the best I could come up with in terms of suggesting why it is that the appellate court used the You're saying that their finding of an ambiguity in the statute is what led to them reading a judicial warrant requirement into the statute? That's what I am suggesting. So, again, if this court does address the issue and finds the statute unambiguous, certainly there's no explicit reference to a judicial warrant in the statute, right? Not in that section. That is correct. So that the harmonization theory, if you will, that comes from Chavda, that the court also relied on very heavily, in my opinion, has some basis for suggesting that that's true. In other words, that the due course of law provision is in Section 4 of the County Jail Statute, Section 9 of the County Jail Statute, and then that's it. Four, of course, relates to the commitment issue by a judge. Nine relates to administrative transfers to other county jails in other counties if there is safety and or overcrowding issues and or particular concerns for the safety of any given inmate. So, again, the distinctions and the fact that because those were administrative transfers that had nothing to do with promoting law enforcement, that is something that I think the appellate court took into consideration. I think also they took into consideration the fact that they saw a wrong and they wanted to right that wrong. The wrong that they saw, I think, was terribly intertwined with the arguments that were legitimately made before the appellate court. With respect to the last matter here, and that is the inaudibility of the tapes, I don't think there is any question whatsoever based upon Judge Surya's listening to those tapes. We listened to them in chambers. As a matter of fact, the state's attorney even provided the judge and myself with a copy of what he purported to be a transcript, a partial transcript, I might add, of some of the things that he thought he heard on the tape when he listened to them. Judge Surya listened to those tapes, took several hours before we got through them, and made his own finding that he could not discern anything. As a matter of fact, he went on to say that he could not justify the written transcript, the partial written transcript that was provided to him by Mr. Hubby with what he was unable to hear on the tapes. Therefore, he determined that they were entirely unreliable, entirely untrustworthy, and even if those tapes were presented to him at the time of trial, if it were a bench trial, that he wouldn't be able to do anything with them because he couldn't hear them. And then again, when the state on appeal argued that they wanted to provide the appellate court with those tapes, I conferred in that, I conceded to that, the appellate court listened to them, and they too couldn't hear it. So how much more could we suggest that these tapes are inaudible other than we've got all these people who have listened to them, the rules of law are very strict in this sense, and it's a finding by the court, and that can't be disturbed because there is no abuse of discretion here. Thank you very much. Your Honors, I have a couple of brief comments to Defense Counsel's argument. Number one, he apparently agrees with our position that the Fourth Amendment, part of the ruling of the appellate court should be sent back because it's unfair to him. He needs to offer proof, he needs to present argument if he decides in the trial court. But yet, it shouldn't when the shoe is on the other foot. When the state is the loser and he's the beneficiary at the appellate court level, it's apparently okay. If defendant's right, if an intermediate reviewing court can uphold an interlocutory suppression ruling on grounds that were never litigated, never raised, never offered proof on, never argued, then basically we'd be taking a huge step towards appeal by ambush in Illinois. And we urge this court not to condone something like that. If defendant's right, if the fourth needs to go back for him but the fifth is fine, then it's appeal by ambush only if it hurts the state. That simply is not a fair process of review and we ask this court to rectify that. On the issue of the construction of the jail protocol provision, Justice Freeman, I'd like to clear up if I might any misunderstanding the court might have with respect to our position on people v. CAMPA. It's not our position that CAMPA is irrelevant. It's our position, in fact, that CAMPA, if you take a look at CAMPA, actually supports the opposite conclusion that the appellate court used it for. In CAMPA, what this court said when it's construing the speedy trial provisions, had to decide whether or not someone was on bail or in custody, it said even if the sheriff does something discretionarily with respect to his detainees, even if it looks like bail, it feels like bail, it's not bail. So in other words, it's okay for the sheriff to do these kinds of things and it doesn't interfere with the bail court's authority. That's our position with respect to CAMPA, so no, it's absolutely not irrelevant. It's supportive of our theory. And just briefly, again, with respect to defendant's argument, difference doesn't make something ambiguous. This jail protocol provision simply does not warrant construction. It's plain on its face and we ask this court to repudiate on the merits of the appellate court's construction of this particular provision. Now defendant says, he says that the appellate court apparently saw a wrong and wanted to write it. And that's actually something that I want to briefly talk about, because implicitly, the driving force behind both the position of the appellate court and the position of defendant in this case, is this belief that the officers in this case did something unscrupulous. And I'm here today to tell this court in no uncertain terms that they did not. Nor, by the way, do the vast majority of officers out there behave in unscrupulous, unconstitutional behavior. The officers in this case did not try to end-run the Constitution, as defendant suggests. They even went so far in their investigation in this case to exonerate an innocent man that no less than six people identified as a shooter. They didn't try to end-run defendant's right to counsel. They didn't try to end-run his McCauley rights. They even let a Sixth Amendment counsel confer with him when he didn't have a constitutional right to that. They let the same Sixth Amendment counsel participate and be with him at the lineup. Again, no constitutional basis for that right. Michael Davis was not a police agent in this case. He was a free agent. Defendant himself bragged to Michael Davis while they were together in the bullpen. Michael Davis then brought that information to the police. The Constitution, your honors, can't and shouldn't protect these guys from themselves. The use of undercover gang members is oftentimes the only way that the police and law enforcement and society as a whole can gather evidence on incarcerated gang members. It's the police's right and a societal good to get an admission from defendant's own lips, so long as it's done within the confines of the Constitution, which absolutely was in this case. Your honors, don't let the scepter of the unscrupulous police officer supplant the reality, particularly in this case. The Constitution itself stands as a bulwark against a baroque officer. It simultaneously strikes a balance between society's right to truth and the rights of criminal defendants. Make no mistake about it, your honors, if this court upholds the judicial oversight requirement, it will essentially be pushing protections for criminal defendants into the pre-arrest, pre-custodial interrogation, pre-charge realm on the investigatory timeline. Pre-fourth, pre-fifth, and pre-sixth, there is a concomitant cost to this. It will necessarily upset the carefully calibrated relationship between society's right and the rights of criminal defendants that's already drawn in the Fourth, the Fifth, and the Sixth Amendments. We urge this court not to do this. Justice, your honors, is a two-way street. And therefore, for these reasons and those other reasons, we urge this court not to do this. And I will set forth in our brief, again, we ask this court to reverse the suppression on 604A grounds, reverse the Fourth Amendment on procedural grounds, reverse the construction on the merits, and remand the cause to the appellate court for the Fifth McCauley issue. Thank you, counsel. Thank you.